**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE THOMAS, on behalf of herself and all others similarly situated,**

Plaintiff,

v.

**SALLY BEAUTY SUPPLY, LLC,**

Defendant.

---

**Docket No.**

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTINE THOMAS, ("Plaintiff" or "Ms. Thomas"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, SALLY BEAUTY SUPPLY LLC ("SALLY BEAUTY" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.sallybeauty.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, CHRISTINE THOMAS, is a resident of Bronx County, New York. At the age of twelve, Ms. Thomas sustained severe bilateral ocular trauma that permanently and irreversibly damaged both eyes. As documented by her treating optometrist, Dr. Christopher R. Scheno, O.D., Ms. Thomas's resulting visual impairment is permanent and includes complete loss

of vision in her right eye and severely compromised residual vision in her left eye. (See Ex. A – Christine Thomas Medical Letter/Report, dated July 15, 2026.)

2. As a blind consumer, Ms. Thomas relies on screen-reading software, including NonVisual Desktop Access ("NVDA"), and keyboard-only navigation to browse websites, read product information, compare available merchandise, evaluate purchasing options, and complete online transactions. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind users to navigate websites independently. For this technology to function, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structure, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these requirements, screen readers cannot accurately interpret or communicate the website's content, rendering portions of the site inaccessible to blind users.

3. Plaintiff brings this civil action against Defendant, SALLY BEAUTY SUPPLY LLC, which operates the Sally Beauty brand and commercial Website, www.sallybeauty.com, through which consumers may browse and purchase beauty, hair-care, skin-care, personal-care, and related merchandise; obtain product descriptions, pricing, ingredient and other product information; and access other services and functionality made available to Defendant's customers.

4. Defendant, SALLY BEAUTY SUPPLY LLC ("Defendant" or "Sally Beauty"), operates the Sally Beauty brand and the commercial website located at www.sallybeauty.com (the "Website"). Through the Website, Defendant presents its merchandise to consumers, provides information concerning the products offered for sale, and provides online functionality through which consumers may research, evaluate, select, and purchase merchandise.

5. Defendant's Website is an important means through which consumers can investigate products before deciding whether particular merchandise is suited to their individual needs. Consumers visiting the Website can review available products and obtain information concerning such matters as the nature of the product, its price, size, ingredients, characteristics, and other information necessary to evaluate the merchandise and make an informed purchasing decision.

6. Plaintiff has a genuine and personal interest in the types of hair-care and skin-care products offered by Sally Beauty. Ms. Thomas experiences persistent problems with excessive dryness affecting her hair and skin. The dryness of her hands can become severe enough that, without the application of lotion, the skin on her hands may crack and bleed. Ms. Thomas likewise experiences painful cracking and dryness of her lips and feet. Because of these persistent problems, Ms. Thomas regularly searches for businesses offering lotions, shampoos, and other skin- and hair-care products that might provide her meaningful relief.

7. Ms. Thomas's interest in locating suitable products is not casual or merely investigatory. She has previously tried products that, in her experience, did not provide the benefits or efficacy represented to her. As a result, product-specific information is particularly important to Ms. Thomas before she decides whether to purchase and use another hair- or skin-care product. She wants to independently determine what a product contains, the quantity offered, what it costs, its intended purpose and characteristics, and whether the available information suggests that the product may be suitable for her particular needs.

8. Ms. Thomas learned about Sally Beauty during a session at VISIONS, where other visually impaired individuals discussed Sally Beauty with her and spoke favorably about the

company and its products. Based upon those recommendations and her continuing search for hair- and skin-care products that could address the problems she experiences, Ms. Thomas decided to visit Defendant's Website and independently investigate products offered by Sally Beauty.

9. Plaintiff attempted to access and use Defendant's Website on July 10, 2026, July 11, 2026, and September 29, 2026, including for the specific purpose of researching hair-care and skin-care products that might address her ongoing needs and obtaining the information necessary to evaluate those products and determine whether to purchase them.

10. During her visits, Plaintiff located an Anti-Wrinkle Facial Serum offered through Defendant's Website. Plaintiff was genuinely interested in the product and attempted to learn more about it, including its size, price, ingredients, characteristics, and other information relevant to determining whether the serum might be suitable for her extremely dry and frequently cracked skin.

11. Plaintiff also located Bosley hair-care merchandise offered through Defendant's Hair Thinning & Hair Loss Solutions portion of the Website, including hair-thickening merchandise. Because Plaintiff continuously experiences dry hair and searches for hair-care products that may better address her needs, she wanted to independently investigate the Bosley product, learn what the product contained and represented, evaluate its characteristics and price, and determine whether it was a product she wished to purchase.

12. Plaintiff was unable to meaningfully complete either inquiry. During her visits to www.sallybeauty.com, she encountered numerous accessibility barriers that interfered with her ability to independently navigate and understand Website content using NVDA and prevented her from obtaining the same product information and purchasing opportunities made available

visually to sighted consumers.

13. These barriers were particularly consequential to Plaintiff because detailed product information was central to the very reason she visited Sally Beauty's Website. Given her continuing skin and hair problems and her prior experiences with products that did not provide the results she expected, Plaintiff did not want to purchase another product without first being able to independently research and evaluate it.

14. The accessibility barriers consequently prevented Plaintiff from independently determining essential information concerning merchandise in which she had a genuine interest. With respect to the Anti-Wrinkle Facial Serum, Plaintiff was unable to independently obtain the product information she sought concerning its size, price, ingredients, characteristics, and suitability for her needs. Plaintiff likewise was unable to independently obtain the information she sought concerning the Bosley hair-care merchandise and determine whether that product was suitable for her hair-care needs.

15. Rather than being able to independently investigate the merchandise and make an informed purchasing decision in the manner afforded to sighted consumers, Plaintiff encountered so many accessibility obstacles while attempting to use the Website with NVDA that she became unable to effectively continue her product research and ultimately left the Website without obtaining the information necessary to decide whether to purchase the products.

16. The barriers experienced by Plaintiff are consistent with accessibility defects documented on portions of Defendant's Website. Among other things, accessibility evaluation of Defendant's Hair Thinning & Hair Loss Solutions page identified defects involving linked images missing alternative text, missing and empty form labels, an empty button, empty links, and

structural accessibility issues. Such defects can interfere with the programmatic communication of Website content and interactive functionality to users who rely upon screen-reading technology.

17. Indeed, the WAVE evaluation of Defendant's Hair Thinning & Hair Loss Solutions page identified 61 accessibility errors on that page alone. The evaluated page contained numerous Bosley hair-care products, including Women's Healthy Hair Thickening Shampoo, as well as other Bosley hair-thickening and hair-regrowth products.

18. This action arises from Defendant's alleged failure to design, construct, maintain, and operate its Website so that its content and functionality are fully and equally accessible to Plaintiff and other blind and visually impaired individuals who rely upon screen-reading technology.

19. The accessibility barriers encountered by Plaintiff include defects affecting the programmatic communication of Website content and controls to screen-reading software. As detailed more fully below, those barriers impair access to essential functions and information concerning Defendant's merchandise, including product information, product images and their meaningful textual equivalents, links, controls, forms, navigation, and functionality necessary to investigate and purchase Defendant's products.

20. As a result of those barriers, Plaintiff was unable to independently obtain the full and equal benefit of the goods, services, information, privileges, advantages, and accommodations Defendant makes available through its Website.

21. Defendant's failure to provide Plaintiff with full and equal access to its Website, www.sallybeauty.com, and the goods, services, information, privileges, advantages, and accommodations offered in connection therewith violates Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189, as well as the applicable provisions of New York State and New York City law alleged herein.

22. Plaintiff remains genuinely interested in the Anti-Wrinkle Facial Serum, the Bosley hair-care merchandise she attempted to investigate, and other hair-care and skin-care products offered by Sally Beauty that may address her continuing needs. Plaintiff intends to return to Defendant's Website to research those products, obtain the product, ingredient, size and pricing information necessary to make an informed purchasing decision, and purchase suitable merchandise once she can independently access the Website and its functionality using her screen-reading software.

**JURISDICTION AND VENUE**

23. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

24. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims arising under New York law, including the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York Civil Rights Law §§ 40-c and 40-d ("NYCRL"), because those claims arise from the same nucleus of operative facts as Plaintiff's federal ADA claim.

25. Defendant, SALLY BEAUTY SUPPLY LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal office located at 3001 Colorado Boulevard, Denton, Texas 76210. Defendant is authorized to conduct

business in the State of New York.

26. This Court has personal jurisdiction over Defendant because Defendant purposefully conducts substantial commercial activity within the State of New York and maintains an active retail presence in New York. Defendant operates the commercial Website, www.sallybeauty.com, through which it presents and offers hair-care, skin-care, beauty, and related merchandise to consumers and provides product information and purchasing functionality. Defendant also maintains physical Sally Beauty retail stores throughout New York. Sally Beauty's own store locator identifies numerous retail locations within the State, including locations in New York City.

27. Defendant's contacts with this District are not limited to the accessibility of a website from New York. Sally Beauty maintains a physical retail location at 64 West 225th Street, Bronx, New York 10463, within the same county in which Plaintiff resides. Publicly available location information identifies that location as a Sally Beauty retail store and associates it with Defendant's www.sallybeauty.com online presence.

28. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Section 1391(b)(2) permits venue in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."

29. Plaintiff resides in Bronx County, New York, within the Southern District of New York. On July 10, 2026, July 11, 2026, and September 29, 2026, Plaintiff accessed and attempted to use Defendant's Website from within this District using her NVDA screen-reading software for the purpose of researching Sally Beauty merchandise, including the Anti-Wrinkle Facial Serum

and Bosley Women's Healthy Hair Thickening Shampoo, obtaining information concerning those products, and determining whether those products were suitable for her personal skin-care and hair-care needs.

30. During those visits, Plaintiff encountered the accessibility barriers alleged herein while physically located within this District. Plaintiff was thereby denied equal access within this District to the Website's product information, functionality, goods, and services, including information concerning the specific skin-care and hair-care products Plaintiff desired to investigate and potentially purchase.

31. Defendant's New York contacts are directly relevant to the goods and services Plaintiff attempted to access. Defendant markets and offers beauty and personal-care merchandise to New York consumers through its Website while also maintaining physical retail locations within New York, including a Sally Beauty retail location in Bronx County. Plaintiff, a Bronx County resident, accessed Defendant's Website from within this District seeking information concerning products of the same nature as those Defendant markets to consumers through its online and physical retail operations.

32. Accordingly, venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims, including Plaintiff's repeated attempts to access Defendant's Website and the alleged denial of equal access resulting therefrom, occurred within the Southern District of New York.

33. Courts addressing website-accessibility claims against businesses located outside New York have sustained the exercise of personal jurisdiction where the alleged facts establish sufficient New York-directed commercial contacts. See Romero v. 88 Acres Foods, Inc., 580 F.

Supp. 3d 9 (S.D.N.Y. 2022) (denying an out-of-state defendant's motion to dismiss an ADA website-accessibility action for lack of personal jurisdiction); *Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022) (denying motion to dismiss, including for lack of personal jurisdiction, where the defendant operated an ecommerce website and allegedly distributed its products in New York). See also *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (denying motion to dismiss ADA claims arising from alleged accessibility barriers on a national retailer's website and mobile application). Thus, jurisdiction and venue are appropriate in this District because Defendant purposefully conducts commercial activity in New York, maintains a physical retail presence in this District, Plaintiff resides here, Plaintiff repeatedly accessed Defendant's Website from within this District, and Plaintiff suffered the alleged denial of equal access here.

## **THE PARTIES**

34. Plaintiff, CHRISTINE THOMAS, is and was at all relevant times a resident of Bronx County, New York.

35. Plaintiff is legally blind and visually impaired and is an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and the applicable New York State and New York City disability laws. Plaintiff's visual impairment substantially limits the major life activity of seeing and substantially impairs her ability to visually perceive and independently interpret information presented through conventional visual interfaces.

36. Because of her visual disability, Plaintiff relies upon screen-reading software,

including NonVisual Desktop Access ("NVDA"), to access and navigate websites, identify links and controls, read text and product information, obtain pricing, ingredient, size, and other information concerning merchandise, and otherwise interact with digital content independently. Plaintiff therefore requires websites to communicate visually presented information and interactive functionality in a manner that is compatible with screen-reading technology.

37. Defendant, SALLY BEAUTY SUPPLY LLC ("Defendant" or "Sally Beauty"), is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal office located at 3001 Colorado Boulevard, Denton, Texas 76210. Defendant is authorized to conduct business in the State of New York.

38. Defendant owns, operates, and/or controls the Website located at www.sallybeauty.com (the "Website"), through which Defendant presents and offers hair-care, skin-care, beauty, and related merchandise to the public and provides consumers with information concerning its products and purchasing opportunities.

39. The Website is an important component of Defendant's interaction with consumers. Through the Website, consumers can browse Sally Beauty merchandise, review information concerning particular products, including product descriptions, prices, sizes, ingredients, characteristics, and other product information, evaluate merchandise, and access functionality through which products may be selected and purchased.

40. Defendant's Website therefore serves as a digital gateway through which consumers obtain information concerning Sally Beauty merchandise and access the goods and services Defendant offers to the public. The Website's accessibility is particularly important to blind and visually impaired consumers who cannot independently perceive visually presented

product information or interact with Website functionality without assistive technology.

41. Defendant also maintains physical Sally Beauty retail locations in New York, including within Bronx County. Defendant's Website and physical retail operations collectively provide consumers with access to Defendant's beauty, hair-care, skin-care, and related merchandise and services.

42. Defendant is responsible for providing Plaintiff and other individuals with disabilities full and equal access to the goods, services, information, privileges, advantages, and accommodations Defendant makes available through its Website and in connection with its products, services, and retail operations.

## NATURE OF ACTION

43. This is a civil rights action brought pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and the applicable laws of the State and City of New York, arising from Defendant SALLY BEAUTY SUPPLY LLC's alleged failure to provide blind and visually impaired individuals with full and equal access to its Website, www.sallybeauty.com, and the goods, services, privileges, advantages, and accommodations offered in connection therewith.

44. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of places of public accommodation. The United States Department of Justice has recognized that inaccessible web content can deny individuals with disabilities equal access to information, goods, and services offered by businesses open to the public.

45. Defendant owns, operates, and/or controls the commercial Website located at

www.sallybeauty.com (the "Website"). Plaintiff alleges that Defendant has failed to design, construct, maintain, and operate the Website in a manner that provides blind and visually impaired consumers who rely upon screen-reading technology with full and equal access to Defendant's goods, services, information, privileges, advantages, and accommodations.

46. Plaintiff seeks declaratory and injunctive relief requiring Defendant to provide and maintain an accessible Website, together with the relief available under the applicable federal, state, and local laws alleged herein.

## STATEMENT OF FACTS

47. Plaintiff CHRISTINE THOMAS is a legally blind consumer residing in Bronx County, New York. As documented by her treating optometrist, Dr. Christopher R. Scheno, O.D., Plaintiff sustained severe bilateral ocular trauma during childhood that caused complete and permanent loss of vision in her right eye and severely compromised residual vision in her left eye. Her bilateral visual impairment is permanent, irreversible, and satisfies the applicable criteria for legal blindness. Because Plaintiff cannot reliably read standard print, visually inspect product packaging or photographs, or independently operate conventional visual interfaces, she relies upon assistive technology, including NonVisual Desktop Access ("NVDA") screen-reading software and keyboard-based navigation, to access digital content and shop online. (See Exhibit A.)

48. Plaintiff uses NVDA to obtain the same product information that sighted consumers acquire visually, including the identity of merchandise, product descriptions, ingredients, intended uses and benefits, available sizes, prices, directions, warnings, promotional terms, customer options, and purchasing information. She also depends upon properly labeled

links, buttons, menus, form fields, and other controls to navigate product categories, distinguish among similar products, open product-detail pages, obtain additional information, and proceed toward a purchase.

49. When product images lack meaningful textual equivalents, links or buttons lack accessible names, form controls lack programmatically associated labels, or page headings and content are not presented through a logical structure, NVDA cannot reliably identify and communicate the Website's content and functionality to Plaintiff. Under those circumstances, Plaintiff cannot independently determine which product is being presented, what information pertains to that product, which control will perform a desired action, or how to proceed through the shopping process.

50. Plaintiff experiences persistent and severe dryness affecting her hair, hands, lips, feet, and other areas of her skin. The dryness of her hands can become so severe that, without the regular application of lotion, her skin may crack and bleed. Plaintiff's lips become painfully dry and cracked, and she experiences similar dryness and cracking affecting her feet.

51. Because these problems are persistent, Plaintiff regularly searches for businesses offering lotions, serums, shampoos, and other skin-care and hair-care products that might provide meaningful relief. Plaintiff has previously purchased or used products that, in her experience, did not provide the efficacy or benefits represented to her. She is consequently reluctant to purchase another skin-care or hair-care product without first obtaining sufficient information to evaluate its ingredients, intended uses and benefits, size, price, directions, and suitability for her particular needs.

52. Plaintiff learned about Sally Beauty during a session at VISIONS, where other

blind and visually impaired individuals spoke favorably about Sally Beauty and its products. Based upon those recommendations and her continuing search for effective skin-care and hair-care products, Plaintiff decided to visit Defendant's Website and independently investigate the merchandise offered by Sally Beauty.

53. Defendant's Website was particularly important to Plaintiff because it represented a convenient means of privately and independently researching products before purchasing and applying them. Because Plaintiff cannot visually inspect product packaging, read printed labels, or evaluate product images in the manner available to a sighted consumer, she depends upon accessible digital product information and properly coded Website functionality to conduct that research.

54. Plaintiff visited and attempted to use www.sallybeauty.com on July 10, 2026, July 11, 2026, and September 29, 2026, from her residence in Bronx County, New York. During those visits, Plaintiff used NVDA and keyboard-based navigation to search for skin-care and hair-care products that might address her persistent dryness and related personal-care needs.

55. Among the products Plaintiff specifically located and desired to investigate was Retinol Anti-Wrinkle Facial Serum, which Defendant displayed on the Treatments & Serums portion of its Website. Plaintiff's interest in this particular serum was genuine and personal because she was actively searching for a product that might moisturize and improve the condition of her persistently dry, cracked, and sometimes painful skin.

56. Before deciding whether to purchase and apply Retinol Anti-Wrinkle Facial Serum, Plaintiff wanted to determine the size or quantity being offered, its price, ingredients, directions for use, intended benefits, characteristics, warnings, and other information relevant to

whether the serum was suitable for her skin. This information was particularly important to Plaintiff because products she had previously tried had not provided the efficacy or relief she expected.

57. Plaintiff attempted to use NVDA and keyboard-based navigation to identify Retinol Anti-Wrinkle Facial Serum, distinguish it from other treatments and serums displayed through the Website, open or reach the information associated with the product, and determine whether she wished to purchase it.

58. Plaintiff could not independently complete those tasks because accessibility barriers interfered with NVDA's ability to identify, interpret, and communicate the relevant product content and interactive functionality. The product images and image-based links were not consistently accompanied by meaningful textual alternatives, preventing Plaintiff from reliably identifying product imagery and determining the identity or destination of image-based links.

59. Plaintiff also encountered links that lacked meaningful accessible text, buttons that did not communicate their identity or purpose, and form fields and controls that lacked accessible labels. Because NVDA did not provide sufficient information concerning the purpose of those elements, Plaintiff could not reliably determine which links or controls would provide additional information about Retinol Anti-Wrinkle Facial Serum, permit her to select an available option, or allow her to proceed toward a purchase.

60. Deficiencies in the headings and structural organization of the Treatments & Serums page further interfered with Plaintiff's ability to move logically through the content, distinguish information concerning Retinol Anti-Wrinkle Facial Serum from information concerning neighboring products, and efficiently reach the details she was attempting to obtain.

61. A WAVE evaluation of the Treatments & Serums page on which Retinol Anti-Wrinkle Facial Serum appeared identified 105 accessibility errors, including missing alternative text, linked images missing alternative text, missing and empty form labels, an empty button, and empty links. The evaluation also identified skipped heading levels and numerous redundant links. (See Exhibit B.)

62. The defects recorded in that report were directly relevant to the obstacles Plaintiff encountered while investigating Retinol Anti-Wrinkle Facial Serum. Missing alternative text and linked images without alternative text interfered with NVDA's ability to identify and meaningfully communicate product imagery and image-based links. Missing and empty form labels deprived Plaintiff of information concerning the identity and purpose of interactive fields and controls. Empty links and the empty button caused her to encounter actionable elements without sufficient information explaining their destination or function.

63. As a result of those barriers, Plaintiff could not independently obtain and evaluate the information she wanted concerning Retinol Anti-Wrinkle Facial Serum, including its size, ingredients, directions, intended benefits, warnings, characteristics, and suitability for her skin-care needs. Although the Website displayed the product and related information visually to sighted consumers, it did not communicate that information and the associated functionality to Plaintiff in an equally effective manner through NVDA.

64. Plaintiff encountered so many inadequately identified and inaccessible elements while attempting to investigate Retinol Anti-Wrinkle Facial Serum that she became frustrated and abandoned her effort. She left the Website without obtaining the information necessary to determine whether the serum was suitable for her needs and without being able to make an

informed purchasing decision.

65. Plaintiff also specifically located and became interested in Bosley Women's Healthy Hair Thickening Shampoo, which Defendant displayed through the Hair Thinning & Hair Loss Solutions portion of its Website. Plaintiff's interest in this particular shampoo was genuine and personal because she experiences persistent dryness affecting her hair and regularly searches for shampoos and related products that may improve its condition, manageability, and appearance.

66. Before deciding whether to purchase Bosley Women's Healthy Hair Thickening Shampoo, Plaintiff wanted to determine the size or quantity being offered, its price, ingredients, intended benefits, directions for use, warnings, and other available product characteristics. Plaintiff also wanted to determine whether this particular shampoo appeared appropriate for her dry hair and meaningfully different from products she had previously tried without satisfactory results.

67. Plaintiff attempted to use NVDA and keyboard-based navigation to identify Bosley Women's Healthy Hair Thickening Shampoo, distinguish it from the other Bosley products displayed through the same portion of the Website, access the information associated with the shampoo, and determine whether she wished to purchase it.

68. The Hair Thinning & Hair Loss Solutions page displayed multiple similar hair-care products, including shampoos, conditioners, thickening products, hair-regrowth treatments, systems, supplements, and other Bosley merchandise. Meaningful accessible identification of the individual product images, links, names, and controls was therefore necessary for Plaintiff to distinguish Bosley Women's Healthy Hair Thickening Shampoo from the other merchandise displayed on the page.

69. Plaintiff was unable to reliably distinguish and investigate Bosley Women's Healthy Hair Thickening Shampoo because linked product images lacked meaningful alternative text and actionable links and buttons did not consistently communicate their identity, destination, or purpose through NVDA. These defects prevented Plaintiff from knowing with confidence whether a particular product image or link concerned the shampoo she wanted, another Bosley product, or a separate item presented nearby.

70. Plaintiff also encountered missing and empty form labels that interfered with her ability to identify and use the product-selection, filtering, pickup, and other shopping controls presented on the page. Without accessible labels, NVDA could not reliably communicate what information a field requested, which product option a control affected, or what result would follow from activating the control.

71. Structural defects, including skipped heading levels, further interfered with Plaintiff's ability to move logically through the Hair Thinning & Hair Loss Solutions content, distinguish one grouping of products from another, and efficiently locate the information associated specifically with Bosley Women's Healthy Hair Thickening Shampoo.

72. A WAVE evaluation of the Hair Thinning & Hair Loss Solutions page on which Bosley Women's Healthy Hair Thickening Shampoo appeared identified 61 accessibility errors, including linked images missing alternative text, missing and empty form labels, an empty button, and empty links. The evaluation also identified an orphaned form label, a missing fieldset, and skipped heading levels. (See Exhibit B.)

73. The defects recorded in that report directly affected the manner in which Plaintiff needed to investigate Bosley Women's Healthy Hair Thickening Shampoo. Linked product

images missing alternative text impaired NVDA's ability to communicate which product was associated with a particular image-based link. Empty links and the empty button caused Plaintiff to encounter interactive elements that NVDA could not meaningfully identify. Missing and empty labels interfered with her ability to understand and operate the controls necessary to select, filter, investigate, and pursue the product.

74. Consequently, Plaintiff could not independently obtain and evaluate the information she sought concerning Bosley Women's Healthy Hair Thickening Shampoo, including its size, ingredients, directions, intended benefits, warnings, price, and suitability for her dry hair. Repeatedly navigating or activating empty and inadequately identified links, controls, and form elements did not provide Plaintiff with meaningful access to that information and created a risk that she would select the wrong product or initiate an unintended action.

75. Plaintiff ultimately abandoned her effort to investigate Bosley Women's Healthy Hair Thickening Shampoo and left the Website without being able to determine whether the shampoo was appropriate for her needs or make the informed purchasing decision available to a sighted consumer.

76. A separate WAVE evaluation of Defendant's broader Skin Care page identified 371 accessibility errors, including missing alternative text and hundreds of missing or empty form labels. The errors appearing within the report itself control notwithstanding any different number appearing in the report's filename. (See Exhibit B)

77. The WAVE evaluations therefore documented accessibility defects across three separately evaluated portions of Defendant's Website: the Treatments & Serums page displaying Retinol Anti-Wrinkle Facial Serum; the Hair Thinning & Hair Loss Solutions page displaying

Bosley Women's Healthy Hair Thickening Shampoo; and Defendant's broader Skin Care page.

78. The recurrence of missing textual alternatives, missing and empty labels, empty links, empty buttons, and structural defects across these separate portions of the Website corroborates Plaintiff's inability to independently identify products, distinguish among similar merchandise, obtain product information, understand the purpose of interactive components, and proceed toward an informed purchasing decision using NVDA.

79. The substantial number and recurrence of the reported errors further demonstrate that the barriers affecting Plaintiff were not confined to a single product page or an isolated and temporary malfunction. Similar types of accessibility defects appeared throughout separate areas of Defendant's skin-care and hair-care shopping content, including the pages through which Plaintiff attempted to investigate the two specific products in which she had developed a genuine interest.

80. The inaccessible presentation of the products and their information was material to Plaintiff's purchasing decisions. A sighted consumer could visually identify Retinol Anti-Wrinkle Facial Serum and Bosley Women's Healthy Hair Thickening Shampoo, distinguish those items from neighboring products, examine their packaging and images, review the product information presented, and use the Website's controls to obtain additional information or proceed toward a purchase. Plaintiff was denied an equivalent opportunity because the Website failed to communicate the same content and functionality effectively through NVDA

81. Plaintiff could not cure these barriers merely by continuing to navigate the Website or repeatedly activating unidentified or inadequately labeled elements. Doing so created a substantial risk that she would open the wrong product, misunderstand the information being

presented, lose her position on the page, select an unintended option, or initiate an action without knowing what the action would accomplish.

82. Nor would requiring Plaintiff to obtain assistance from a sighted person provide full and equal access. Such assistance would require Plaintiff to disclose personal information concerning her skin and hair conditions, reveal her shopping interests, rely upon another person to identify and interpret the products and their information, and surrender the privacy, independence, convenience, and autonomy afforded to sighted consumers using the same Website.

83. Plaintiff did not visit Defendant's Website merely to test its accessibility or browse without a commercial purpose. She visited on three separate dates after receiving favorable recommendations about Sally Beauty from other blind and visually impaired individuals at VISIONS. She did so to research products that might address persistent and sometimes painful conditions affecting her skin and hair and to purchase suitable merchandise if she could obtain the information necessary to make an informed decision.

84. As a direct result of the barriers described above, Plaintiff was unable to complete the shopping activities she undertook on July 10, July 11, and September 29, 2026. She left the Website without purchasing Retinol Anti-Wrinkle Facial Serum, Bosley Women's Healthy Hair Thickening Shampoo, or other suitable skin-care or hair-care merchandise. Her inability to do so resulted from the Website's failure to communicate essential product information and interactive functionality in a manner compatible with NVDA.

85. Plaintiff thereby suffered a concrete and particularized injury through the denial of full and equal access to Defendant's merchandise and online services. Sighted consumers could visually identify the products, obtain and evaluate the information presented concerning them,

distinguish among similar merchandise, operate the Website's controls, and proceed toward a purchase. Plaintiff was denied those same opportunities because of her disability.

86. Plaintiff remains genuinely interested in Retinol Anti-Wrinkle Facial Serum and Bosley Women's Healthy Hair Thickening Shampoo. She likewise remains interested in other lotions, serums, shampoos, and skin-care and hair-care products offered by Sally Beauty that may address her continuing personal-care needs.

87. Plaintiff desires to return to Defendant's Website to independently research Retinol Anti-Wrinkle Facial Serum and Bosley Women's Healthy Hair Thickening Shampoo, compare their ingredients and represented benefits, review their sizes and prices, determine whether they are suitable for her particular needs, and purchase either or both products if the accessible information demonstrates that they are appropriate for her.

88. Plaintiff also desires to investigate and purchase other Sally Beauty products that may provide relief for her persistent skin and hair conditions. Her interest in returning is reinforced by the favorable recommendations that initially prompted her visits and by her continuing need to locate effective products for her skin and hair.

89. Plaintiff is presently deterred from returning because the accessibility barriers remained present throughout her repeated visits and prevented her from obtaining essential information concerning two specific products she genuinely wished to evaluate and potentially purchase. Her deterrence is not based upon a generalized concern that Defendant's Website might be inaccessible. It is based upon her repeated personal encounters with barriers that prevented her from carrying out identified shopping activities involving identified Sally Beauty products.

90. Plaintiff will return when Defendant makes the Website reliably accessible to

consumers who use screen-reading technology. In particular, she intends to return when product images and product characteristics are meaningfully described; product information is presented through a logical and accessible structure; links, buttons, forms, and controls reliably communicate their identity and purpose; and the Website permits her to proceed independently from product discovery and evaluation through the purchasing process.

91. Unless Defendant is required to remediate and maintain the Website in an accessible condition, Plaintiff will continue to be denied independent access to the specific products she seeks and will face a real and immediate risk of encountering the same barriers upon her next visit. Her injury is directly traceable to Defendant's design, operation, and maintenance of the Website and is redressable through injunctive relief requiring Defendant to provide and maintain accessible product information, navigation, interactive controls, and purchasing functionality.

## CLASS ACTION ALLEGATIONS

92. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2), defined as: All legally blind individuals residing in the State of New York who have attempted to access www.sallybeauty.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

93. Common questions of law and fact exist among the Class and Subclass, including but not limited to:

- Whether www.sallybeauty.com qualifies as a "public accommodation" under Title III of the ADA;

- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;

- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to LE VIAN 's information, services, and digital content;

- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace;

- Whether Defendant failed to adopt and implement accessibility policies consistent with **WCAG 2.1 Level AA**;

- Whether injunctive relief is warranted to remedy Defendant's ongoing violations.

94. Plaintiff's claims are **typical** of the claims of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—missing alternative text, inaccessible buttons, unlabeled form fields, broken ARIA references, improper heading structure, and mouse-dependent controls—that affect all Class members attempting to use Defendant's Website.

95. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

96. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

97. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

98. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.sallybeauty.com faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

99. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

100. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> 42 U.S.C. § 12182(a).

101. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

102. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

103. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

104. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

105. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

106. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and

incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

107. Plaintiff, CHRISTINE THOMAS on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

108. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

109. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

110. Defendant LE VIAN CORP., at all relevant times, owned and operated a place of public accommodation—the subject website, www.sallybeauty.com — and also owned, operated, and maintained brick-and-mortar retail outlets, including multiple retail locations in New York City and elsewhere in New York State, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

111. Plaintiff has visited the Website on a number of occasions and has encountered

barriers to his access that exist.

112. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

113. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

114. Defendant’s actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

115. The Defendant’s discriminatory practice also includes, "a refusal to take such steps

as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

116. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

117. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

118. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

119. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil**

**Rights Law) (“NYCRL”)**

120. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

121. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

122. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

123. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law (“NYCRL”) § 40-c.

124. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

125. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant’s Website is a place of public accommodation that does not provide full and equal

accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

126. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

127. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

128. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

129. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

130. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

131. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public

accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

132. Defendant is subject to NYCHRL because it owns and operates the Website, www.sallybeauty.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

133. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

134. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

135. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

136. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

137. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

138. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

139. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

140. Plaintiff is also entitled to reasonable attorneys' fees and costs.

141. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

142. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

143. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

144. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and

Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
October 29, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com